UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC. | CIVIL ACTION NO. 6:17-cv-01324 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| YVONNE E. THIBODEAUX | MAGISTRATE JUDGE HANNA |

## **REPORT AND RECOMMENDATION**

Currently pending is the motion for default judgment (Rec. Doc. 9), which was filed by the Plaintiff, J&J Sports Productions, Inc. ("J&J"). Defendant Yvonne E. Thibodeaux, d/b/a Sparkles-N-Stars II, did not file an opposition. A hearing was held on August 23, 2018. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the record, the evidence, and the law, and for the reasons fully explained below, it is recommended that the motion be GRANTED.

## **BACKGROUND**

J&J is a closed-circuit distributor of sports and entertainment programming.[1] J&J owns and owned the exclusive rights to transmit to commercial and business

---

[1] Rec. Doc. 9-8, p. 2, ¶ 3.

1

premises the closed-circuit television signals for the event *"The Fight of the Century," Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program* ("the Program"), which was broadcast nationwide on Saturday, May 2, 2015.[2] J&J marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers, including casinos, racetracks, bars, restaurants, and night clubs.[3]

Defendant Thibodeaux operated and/or operates Sparkles-N-Stars II, a night club with a capacity of one-hundred fifty (150) people, located at 625 West 2nd Street, Crowley, Louisiana 70526.[4] Defendant Thibodeaux, operating Sparkles-N-Stars II as a sole proprietorship, advertised that she would show the Program and collect a $7.00 cover charge from each customer who entered the premises on May 2, 2015.[5] Defendant Thibodeaux did not purchase the requisite license from J&J, the cost of which would have been $6,000.00 for a business with a capacity of 101-200 people.[6] On May 2, 2015, J&J's private investigator paid a $7.00 cover charge to enter the premises of Sparkles-N-Stars II.[7] According to J&J's private investigator, the Program was broadcast via two televisions, during which time there were

---

[2] Rec. Docs. 3, pp. 8-9, ¶ 18; 9-1, p. 1; 9-8, p. 2, ¶ 3; and 9-10.
[3] Rec. Doc. 9-8, p. 2, ¶ 3.
[4] Rec. Doc. 9-1, p. 2, ¶¶ 2-4; 9-11; and 9-7.
[5] Rec. Doc. 9-1, p. 4, ¶¶ 14-15; and 9-7.
[6] Rec. Doc. 9-1, pp. 3-4, ¶¶ 7-11; 9-7; 9-8; and 9-9.
[7] Rec. Doc. 9-7.

approximately twenty (20) people inside of the night club, and alcoholic beverages and food were being sold on the premises.[8]

On October 16, 2017, J&J commenced this action by filing a Complaint pursuant to the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 553 and 605.[9] In Count I, J&J seeks statutory damages, costs and attorneys' fees pursuant to 47 U.S.C. §§ 605(a), (e)(3)(A), (e)(3)(B)(iii), (e)(3)(C)(ii), and (e)(4), which prohibits interception and publishing of radio communications, as well as 18 U.S.C. §§ 2511 and 2520, which prohibit and provide a private right of action for the intentional interception or reception of any wire, oral, or electronic communications.[10] In Count II, J&J seeks statutory damages, costs and attorneys' fees pursuant to 47 U.S.C. § 553(c), which prohibits the interception or reception of communications offered over a cable system.[11] J&J further alleges that Defendant Thibodeaux willfully intercepted, received, published, divulged, displayed, and/or exhibited the Program for commercial advantage or private financial gain, such that enhanced statutory damages are warranted.[12] To the extent that the Court finds that damages are only available under one statute, J&J explicitly

---

[8] Rec. Doc. 9-1, pp. 2-4, ¶¶ 3, 5, 11-13; 9-7; and 9-11.
[9] Rec. Docs. 1, 3.
[10] Rec. Doc. 3, pp. 8-11.
[11] Rec. Doc. 3, pp. 11-12.
[12] Rec. Doc. 3, p. 10, ¶ 22; p. 11, ¶ 27; and p. 12, ¶ 31(b).

asks that the claims be considered in the alternative rather than read to seek double damages.[13]

On November 4, 2017, in accordance with Rule 4 of the Federal Rules of Civil Procedure, Defendant Thibodeaux was served via a private process server with the summons and complaint.[14] Defendant Thibodeaux failed to answer or otherwise defend the allegations set forth in the Complaint.[15] Upon Defendant's failure to answer, the Clerk of Court entered an Entry of Default, on January 4, 2018, notice of which was mailed to Defendant Thibodeaux that same day.[16] Pursuant to Federal Rule of Civil Procedure 55, and well after the requisite fourteen days had elapsed, J&J filed the instant motion for entry of default judgment on May 24, 2018.[17]

The motion was originally set for the undersigned's next regular motion date, July 26, 2018.[18] A notice of motion setting was issued and a copy was mailed to Defendant Thibodeaux; however, the mail was returned as undeliverable.[19] The undersigned re-issued a notice of motion setting for the next regular motion date, August 23, 2018.[20] The Clerk of Court mailed a copy of the notice to an alternate

---

[13] *Id.* at p. 12, ¶ 33.
[14] Rec. Docs. 5; 6-1, p. 2, ¶¶ 4-5; and 9, p. 2, ¶ 2. Proof of service, indicating that service was made on November 4, 2017, was filed in the record on December 28, 2017. Rec. Doc. 5.
[15] Rec. Doc. 6-1, p. 2, ¶ 6.
[16] Rec. Doc. 7. The mail was returned as undeliverable. Rec. Doc. 8.
[17] Rec. Doc. 9.
[18] Rec. Doc. 10.
[19] Rec. Docs. 10, 11.
[20] Although the undersigned reset the motion and arranged for a new notice to be issued

address, where Defendant Thibodeaux was originally served with the summons and complaint.[21] Prior to the hearing, the undersigned confirmed that notice was mailed to Defendant Thibodeaux at the Washington Street address, in Lafayette. Thus, for purposes of the instant motion, the undersigned assumes that Defendant Thibodeaux received notice of both the motion for default judgment as well as the notice setting the motion for hearing on August 23, 2018.

Attached to the motion and admitted into evidence during the hearing held on August 23, 2018, J&J submitted an affidavit of J&J's President, Joseph Gagliardi;[22] J&J's rate card and closed circuit television license agreement for the relevant fight, held on May 2, 2015;[23] an affidavit of private investigator, Woody Overton;[24] Defendant's application for a City of Crowley Retail Beer & Liquor Permit;[25] record of Defendant's beer and liquor license from the Louisiana Office of Alcohol and Tobacco Control;[26] exhibits purporting to show the demographics of the cities of Crowley and Lafayette, Louisiana;[27] and an affidavit of counsel, Ronnie J. Berthelot,

---

and served, the undersigned notes that J&J's counsel certified that a copy of the motion for default judgment was mailed to Defendant Thibodeaux at both the W. 2nd Street address, in Crowley, as well as the Washington Street address, in Lafayette. Rec. Doc. 9-3.

[21] Rec. Doc. 12, 13; *see also* Rec. Doc. 5.
[22] Rec. Doc. 9-8.
[23] Rec. Docs. 9-9, 9-10.
[24] Rec. Doc. 9-7.
[25] Rec. Doc. 9-11.
[26] Rec. Doc. 9-12.
[27] Rec. Docs. 9-13, 9-14.

in support of his billable time and costs.[28] On the basis of this evidence, J&J alleges that Thibodeaux willfully violated the FCA for commercial gain, by taking steps to and actually receiving the Program without purchasing a license to do so; advertising that she would broadcast the Program; collecting an entry fee from each customer who entered her business premises; and broadcasting the Program to those customers.[29]

## ANALYSIS

### A. THE DEFAULT JUDGMENT STANDARD AND APPLICABLE LAW

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment, pursuant to Rule 55 of the Federal Rules of Civil Procedure: (1) a defendant's default; (2) the clerk's entry of default; and (3) a plaintiff's application for a default judgment.[30] "The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under [Rule] 55."[31] Accordingly, under Rule 55(a), the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

---

[28] Rec. Docs. 9-4, 9-5.
[29] Rec. Doc. 9-2, p. 5.
[30] *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
[31] *J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC*, No. 17-CV-00276, 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937–39 (5th Cir. 1999)).

is shown by affidavit or otherwise . . . ."[32] Thereafter, the court may, upon motion by a plaintiff, enter a default judgment against that party.[33]

Default judgments are "generally disfavored in the law[.]"[34] They are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[35] "This policy, however, is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[36] Default judgments "are 'available only when the adversary process has been halted because of an essentially unresponsive party.'"[37] It follows that "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[38]

Determining whether a default judgment should be entered against a defendant involves a two-part analysis.[39] "First, the court must consider whether the entry of default judgment is appropriate under the circumstances."[40] "Relevant

---

[32] Fed. R. Civ. P. 55.
[33] *Id.*
[34] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger—Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)).
[35] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted).
[36] *Rogers*, 167 F.3d at 936 (internal citations and quotation marks omitted).
[37] *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).
[38] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[39] *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d 807, 813 (M.D. La. 2014).
[40] *Id.* (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[41] "Second, the court must assess the merits of the plaintiff[']s claims and find sufficient basis in the pleadings for the judgment."[42]

### B. DEFAULT JUDGMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES AND J&J HAS STATED A VIABLE CLAIM FOR RELIEF

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.[43] Defendant Thibodeaux was served with the Summons and Complaint, pursuant to Rule 4 of the Federal Rules of Civil Procedure. Thereafter, Defendant Thibodeaux failed to file an answer or otherwise defend the allegations set forth in the Complaint and has also failed to file an opposition to the instant motion. Given Defendant Thibodeaux's failure to file an answer or motion under Rule 12, there are no material facts in dispute. Defendant Thibodeaux has likewise "failed to produce evidence to show that the failure to file an answer resulted from 'good faith mistake or excusable

---

[41] *Lindsey*, 161 F.3d at 893.
[42] *Taylor*, 39 F. Supp. 3d at 813 (citing *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).
[43] Rec. Doc. 3, p. 2, ¶ 2.

neglect.'"[44] The grounds for default are clearly established and Defendant Thibodeaux's unresponsiveness during the nine months since she was served mitigates the harshness of a default judgment.[45] This Court is unaware of any facts which might lead it to set aside the default judgment if ultimately challenged by a defense motion. Therefore, considering the above-recited factors supplied by the Fifth Circuit in *Lindsey*, the undersigned finds that default judgment is appropriate under the circumstances of this case. The court must now assess the merits of J&J's claims.

J&J alleges that Defendant Thibodeaux violated 47 U.S.C. §§ 553 and 605. "The legislative history associated with section[s] 553 and . . . 605 reveals that one of Congress's principal objectives was to discourage theft of cable services."[46] A person violates 47 U.S.C. § 553 when he "intercept[s] or receive [s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization.[47] A person violates 47 U.S.C. § 605 when he, without being entitled thereto, "intercept[s] any radio communication . . . [or] receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such

---

[44] *Boil & Roux*, 2018 WL 1089267, at *2 (quoting *Lindsey*, 161 F.3d at 893).
[45] *Cf. Elite v. KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to "financial privation").
[46] *Prostar*, 239 F.3d 669, 673 (5th Cir. 2001)
[47] 47 U.S.C. § 553(a)(1).

9

communication . . . for his own benefit or for the benefit of another not entitled thereto."[48] "Both sections contemplate civil (and criminal) enforcement measures" and "ultimately implicate similar policy objectives and provide similar standards and remedies."[49]

However, "[t]he Fifth Circuit has noted that 47 U.S.C. § 553 and § 605 make different types of conduct unlawful."[50] While both § 553 and § 605 prohibit the interception of communications, "[a] logical reading of the two provisions reveals a clear demarcation whereby § 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire."[51] "Where, because of the defendant's failure to respond, a plaintiff has been unable to determine the method through which the defendant accessed the unauthorized communication, district courts have awarded default judgments in favor of the plaintiff."[52] In order to prevail, J&J must show (1) that the Program was shown in

---

[48] 47 U.S.C. § 605(a).
[49] *Prostar*, 239 F.3d at 673, 674 (citing 47 U.S.C. §§ 553(b)-(c), 605(e)).
[50] *Boil & Roux*, 2018 WL 1089267, at *2 (citing *J & J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014)); *see also G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 12-3052, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014) ("Stated more simply, for present purposes section 553 prohibits the unauthorized interception of cable services, whereas section 605 prohibits the unauthorized interception of satellite communications.").
[51] *Id.* (quoting *Mandell*, 751 F.3d at 352-53) (internal quotations omitted).
[52] *Boil & Roux*, 2018 WL 1089267, at *2 (citing, *e.g.*, *J & J Sports Prods., Inc. v. Tiger Paw Daiquiris & Grill, LLC*, No. 14-268, 2015 WL 1800619, at *4 (M.D. La. Apr. 16, 2015) (awarding damages under § 553 where, because of Plaintiff's failure to respond, it could not be established how the plaintiff received the broadcast); *J & J Sports Prods., Inc. v. Wine Bistro*

Defendant's establishment, (2) that the Program was shown without authorization by J&J, and (3) that J&J was the exclusive licencee.[53]

Here, J&J admits that while it "alleged the possible methods used by Thibodeaux to receive [the] Program[,]" it "does not know the method chosen by [Thibodeaux]."[54] Nonetheless, it is alleged that J&J's private investigator observed the Program being shown to approximately 20 people via two television screens at Sparkles-N-Stars II, during the Program's May 2, 2015, broadcast. J&J owned the exclusive rights to transmit the closed-circuit television signals for the Program, and Defendant Thibodeaux did not purchase the requisite $6,000.00 license. J&J's president further avers that J&J's programming "cannot be mistakenly, innocently or accidentally intercepted."[55] Although the method used by Defendant Thibodeaux to receive the Program is not clear, the above-cited jurisprudence nonetheless allows the Court to award damages under § 553, which covers communications traveling over cable wire.[56] As was the case in *Onyx*,

> What is clear to [this] Court is that Defendant[] unlawfully exhibited the fight without lawfully purchasing the Program. Defendant[] failed to purchase the licensing fee, but willfully chose to broadcast the fight

---

*LLC*, No. 13–6369, slip op. at 8–9 (E.D. La. July 30, 2014) (same)); *see also G & G Closed Circuit*, 2014 WL 198159, at *3.
[53] *Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, No. 12-2106, 2015 WL 539649, at *4 (W.D. La. Feb. 6, 2015).
[54] Rec. Doc. 9-2, p. 5.
[55] Rec. Doc. 9-8, p. 3.
[56] *See Boil & Roux*, 2018 WL 1089267, at *2.

11

to its approximately [20] patrons at its commercial establishment and served alcoholic beverages and food. Therefore, Plaintiff has demonstrated a sufficient basis for default on Plaintiff's [FCA] claim under 42 U.S.C. § 553.[57]

And, as explained below, "the Court further finds any damages awarded under section 553 in this matter are sufficient to compensate plaintiff."[58]

Although this Court will recommend that the default judgment be granted pursuant to 42 U.S.C. § 553, for the reasons also outlined in *Onyx*, J&J's claims under the Wire Tap Act, 18 U.S.C. § 2511 in conjunction with § 2520, are time barred, because a civil action thereunder "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[59] Here, J&J's first opportunity to discover the alleged violation was on the same day the violation took place, that is, on May 2, 2015, yet the Complaint was not filed until October 16, 2017. Therefore, because J&J's claims were filed beyond the two year prescriptive period, that is, 5 months late, the claims under 18 U.S.C. § 2511 and § 2520 are time barred and do not provide a sufficient basis for a default judgment under 18 U.S.C. § 2511.[60]

---

[57] *J&J Sports Prods., Inc. v. Onyx Ultimate Bar & Grill LLC*, No. CV 17-00589, 2018 WL 344964, at *3 (M.D. La. Jan. 9, 2018).
[58] *See G & G Closed Circuit*, 2014 WL 198159, at *3.
[59] *Onyx,* 2018 WL 344964, at *3 (quoting 18 U.S.C. § 2520(e))
[60] *See Onyx*, 2018 WL 344964, at *3.

C. **APPROPRIATE REMEDIES UNDER § 553**

In the instant motion, J&J urges the Court to grant its motion for default judgment against Defendant Thibodeaux and award a money judgment for the sum of $25,000.00 plus reasonable attorney's fees and all costs.[61]

"Section 553 contemplates the award of either (1) actual damages suffered by Plaintiff, as well as recovery of profits gained by the person violating the Act; or (2) statutory damages of an amount not less than $250 and not more than $10,000, 'as the court considers just.'"[62] "Further, a court may increase an actual or statutory damage award by no more than $50,000 if it finds 'that the violation was committed willfully and for purposes of commercial advantage or private financial gain.'"[63] As the Middle District of Louisiana has explained,

> Courts have employed a number of different methods to determine a "just" amount of statutory damages, including imposing a "flat, sum for damages" or a calculated sum based on the number of patrons in the defendant's establishment at the time of the violation. Courts have also imposed damages in an amount equal to the appropriate sublicensing fee for the establishment, but it has been noted that such a penalty may not deter future violations. Instead, some courts have imposed statutory damages in an amount equal to a multiple of the sublicensing fee. The Court's goal is to balance the financial burden that a significant damages award will place on Defendants with Plaintiff's financial

---

[61] Rec. Doc. 9-2, p. 8.
[62] *Onyx*, 2018 WL 344964, at *4 (quoting *Prostar*, 239 F.3d at 674 (quoting 47 U.S.C. § 553(c)(3)(A)(ii))).
[63] *Onyx*, 2018 WL 344964, at *4 (quoting 47 U.S.C. § 553(c)(3)(B)).

13

harm, the policy and enforcement considerations behind preventing piracy, and the importance of deterrence.[64]

Several similar cases have found that statutory damages in an amount at least twice, if not three times, what the sublicensing fee for lawful broadcast would have been is "just."[65] J&J has established that the sublicensing fee for the Program, to be broadcast at Defendant Thibodeaux's establishment, would have been $6,000.00.[66] Therefore, statutory damages in the amount of $12,000.00, or twice the sublicensing fee, are appropriate in this case.

As recognized, J&J also claims that Defendant Thibodeaux's violation was willful and made for commercial advantage or private financial gain, such that enhanced statutory damages are warranted.[67] In determining whether additional damages for a willful violation are warranted, under § 553(c)(3)(B), courts consider the following five factors:

> (1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the

---

[64] *Onyx*, 2018 WL 344964, at *4 (internal citations omitted).
[65] *Onyx*, 2018 WL 344964, at *4 (twice); *Boil & Roux*, 2018 WL 1089267, at *2 (twice); *J&J Sports Prods., Inc. v. KCK Holdings, LLC*, No. 14-00269, 2015 WL 4656714, at *5 (M.D. La. Aug. 5, 2015) (twice); *Tiger Paw*, 2015 WL 1800619, at *5 (twice); *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 12-3052, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014) (treble); *J & J Sports Productions, Inc. v. Rodriguez*, 2013 WL 3967833, *2 (W.D. Tex. July 31, 2013) (finding treble damages reasonable and awarding the statutory limit of $10,000); *Joe Hand Promotions, Inc. v. Garcia*, 546 F.Supp.2d 383, 386 (W.D. Tex. Jan. 16, 2008) (treble, under § 605 rather than § 553).
[66] Rec. Docs. 9-8, p. 3, ¶ 8; 9-9, p. 2.
[67] Rec. Doc. 3, p. 10, ¶ 22; p. 11, ¶ 27; and p. 12, ¶ 31(b).

broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages.[68]

Here, J&J has established that Defendant Thibodeaux advertised that the Program would be broadcast at her establishment and charged an admission fee or cover charge of $7.00. J&J has further established, through the affidavit of its president, that it has suffered actual damages, the significance of which is unknown, through both lost profits due to pirating and nationwide efforts to police its signals for the purpose of identifying and prosecuting commercial establishments which pirate its programming.[69] However, J&J has not shown that Defendant Thibodeaux engaged in repeated violations over an extended period of time, realized substantial unlawful monetary gains, or charged a food and drink premium. A review of similar cases indicates that enhanced statutory damages of $13,000.00, which is slightly more than twice the statutory damages, would be reasonable and would satisfy, without exceeding, J&J's request herein.[70]

---

[68] *Tiger Paw*, 2015 WL 1800619, at *5-6.
[69] Rec. Doc. 9-8, pp. 2-3, ¶¶ 3-6, and pp. 4-5, ¶¶ 11-12.
[70] *See, e.g., G & G Closed Circuit*, 2014 WL 198159, at *3 (awarding additional damages three times the statutory damages, where violation was willful and for purpose of commercial advantage); *Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, No. 12-2106, 2015 WL 539649, at *6 (W.D. La. Feb. 6, 2015) (awarding enhanced damages of $4,800, which reflects twice the statutory damages and which is four times the estimated license fee for the establishment); *Tiger Paw*, 2015 WL 1800619, at *6 (awarding additional damages of $13,200, which reflects an award equal to three times the amount of the statutory damages awarded); *J & J Sports Productions, Inc. v. Beck*, 2013 WL 5592333, *3 (S.D.Tex. Oct. 9, 2013) (awarding three times the base amount of damages for willful violation, where no cover charge was imposed,

Finally, J&J seeks all costs and reasonable attorney's fees. Pursuant to §553(c)(2)(C), this Court "may . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[71] "The calculation of attorney's fees involves a well-established process."[72] "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[73] Next, the court must determine whether the lodestar figure should be adjusted upward or downward, in consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[74]

In support of J&J's request for attorney's fees, attorney Ronnie J. Berthelot has submitted an affidavit, to which he has attached billing records relevant to this case.[75] Mr. Berthelot's records indicate that his full costs amount to only $400.00,

---

approximately 30 persons watched the event, and there were no allegations defendant was a repeat offender).

[71] 47 U.S.C. § 553(c)(2)(C).
[72] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).
[73] *Id.* (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).
[74] The twelve *Johnson* factors include: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
[75] Rec. Docs. 9-4, 9-5.

the cost to file the Complaint, and his total billable time, excluding administrative time, amounts to 9.1 hours.[76] As stated on the record during the hearing, the undersigned will increase Mr. Berthelot's billable time to account for 3 hours of driving time for roundtrip travel from Baton Rouge to Lafayette for the hearing. As was the case with the same party and attorney in *Wine Bistro LLC,* J&J does not request a certain hourly rate for Mr. Berthelot.[77] Instead, Mr. Berthelot submits that he has been practicing law for thirty-five years, is "AV" rated by Martindale-Hubbel, finished in the top one-third of his law school class at Louisiana State University Paul M. Hebert Law Center, has consistently devoted more than seventy percent of his practice to civil litigation, and has tried as first chair more than twenty-three civil jury trials and approximately 111 bench trials.[78]

Based on Mr. Berthelot's affidavit and this Court's experience, an hourly rate of $250.00 is appropriate.[79] After considering the applicable factors, this Court finds that the lodestar figure, $3,025.00, amounts to reasonable attorney's fees in this case.

---

[76] Rec. Doc. 9-5.

[77] *See J & J Sports Prods., Inc. v. Wine Bistro LLC*, No. 13-6369, 2014 WL 4231180, at *2 (E.D. La. Aug. 26, 2014).

[78] Rec. Doc. 9-4, pp. 1-2, ¶¶ 2-6.

[79] *See Boil & Roux,* 2018 WL 1089267, at *2 (finding $250.00 to be an appropriate hourly rate for this attorney, in a similar case, in the Middle District of Louisiana); *cf. Wine Bistro LLC*, 2014 WL 4231180, at *2-3 (finding $350.00 to be an appropriate hourly rate for this attorney, in a similar case, in the Eastern District of Louisiana).

Furthermore, all costs, in the amount of $400.00, are taxed to Defendant Thibodeaux.

## CONCLUSION

For the reasons fully explained above, this Court recommends that the motion for default judgment (Rec. Doc. 9), which was filed by the Plaintiff, J&J Sports Productions, Inc., be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff, J&J Sports Productions, Inc., be awarded statutory damages in the amount of $12,000.00 and enhanced statutory damages in the amount of $13,000.00, for a total of $25,000.00.

IT IS FURTHER RECOMMENDED that Defendant Yvonne E. Thibodeaux, d/b/a Sparkles-N-Stars II, shall pay to Plaintiff, J&J Sports Productions, Inc., $3,025.00 in attorney's fees and $400.00 in costs.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 23rd day of August, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE